The key issue in this case is the standard a claimant must meet to assert jurisdiction over a road that has been under federal ownership for the past 100 years. And the decision the Court makes here today could affect thousands of these right-of-way claims across the western United States. Well, before we get there, Mr. Spindler, can you address the Alsea Valley problem? Because I'm not sure we have jurisdiction if the district court vacated and remanded to the agency, which I assume includes, take another look at the RS-2477 problem. I'd be happy to address that. What happened here is the Forest Service made two decisions. First, the agency determined that jurisdiction over Forestdale Road properly lay with Alpine County. Second, the agency made a management plan for the entire Forestdale area. The appellants here challenged both of those decisions in separate causes of action. The district court resolved both of those claims. The district court upheld the jurisdictional determination and remanded the management decision. Of course, the jurisdiction determination here is not inseparable from the management decision because the jurisdiction over Forestdale Road drives or determines what the agency's options are in its management of the Forestdale area. The appellants here can't secure the release that they're requesting without addressing the jurisdictional questions because the very reliefs appellants are requesting here, which is to close Forestdale Road to snowmobiles, is the very action that the jurisdictional determination concluded that the agency can't do. And the district court upheld that decision. Can you point to me in the record where the district court did that? Because that was not my reading of the district court's order. I'd be happy to do that, Your Honor. Is there particular language in the district court's opinion from which we can glean that reading? In the district court's footnote, footnote number two, the agency starts by stating that the jurisdictional determination is not a final agency action. The court then, however, goes on to conclude on the next page, which is page six of the decision, excuse me, page eight and nine of the decision to state that the evidence before the Forest Service was adequate to support a decision by the Forest Service to decline to assert jurisdiction over Forestdale Road. And in conclusion, the agency granted summary judgment in favor of the Forest Service on the RS-2477 decision. But then doesn't he go on to say on page nine that the final agency action subject to review, not to close the road, basically is part and parcel of the remand? He does say that. However, Your Honor, we think that's an erroneous conclusion. The requirements for final agency action, which the parties agree on, were clearly met in this case. The agency's jurisdictional determination was the consummation of the Forest Service decision-making process. The jurisdictional determination clearly established new rights and obligations. In this case, the jurisdictional determination, after the jurisdictional determination, the Forest Service stated it no longer had the ability to close Forestdale Road, absent permission from Alpine County to do so. It didn't have the ability to regulate use of the road without the county's permission. Counsel, I want to approach the same issue from maybe a slightly different perspective, and that is the following. Let's assume, for the sake of this question, that ALC does control and that because of the remand, we are not going to decide the merits. And it goes back, and it's still not favorable to you. In a subsequent appeal, would your client have the ability, at that time, to challenge the decision about jurisdiction over Forestdale Road that we're talking about here? Your Honor, I don't know the answer to that question. I think there's a lot of procedural barriers to that taking place. What would happen if this Court would uphold the lower court decision is the agency would go back and do a new management plan. The 1998 jurisdiction determination was upheld by the lower court, so clearly the agency will not be issuing a new jurisdiction determination. Because it's received summary judgment already on that. That's correct. The new management plan will likely make no mention of the 1998 jurisdictional determination. So it's not clear to us that we can get back, get that question back before the court. Further, even if there was the possibility of review later, the reason that this case has not been resolved, and the main impediment to resolving the conflict over use of Forestdale area, both in this case and in the previous litigation between these parties, has been the jurisdictional question. That's why the parties agreed in 1997 to a stipulated judgment in the past litigation to resolve the jurisdictional question before making any management decisions for Forestdale area. Here, the lower court decision disallows the appellants here from getting the relief that they request on remand. That is closure of Forestdale Road to Snowmobile because the Forest Service claims it doesn't have the ability to do that. The district court upheld that determination. That distinguishes this case from Alsea. In Alsea, the entire management plan was sent back to the agency, and the court stated that the agency would be starting from scratch in its management, and the appellants there could secure the relief they requested from the agency remand. That's clearly not the case here because there is no opportunity for the appellants to secure the relief they're requesting on remand. Let's take a hypothetical. Suppose that the Forest Service decides that the closure is in the best interest of the protection of the resource and to address the concerns that have been raised with regard to motorized vehicles during the winter. What would prevent the Forest Service from going to Alpine County and asking Alpine County as part and parcel of the Forest Service's plan to close the road? In which case, you would get the relief that you wanted, and you might or might not then appeal the final decision by the Forest Service. The Forest Service certainly could do that. In fact, that's actually happened as part of the settlement discussions for this litigation. The Forest Service and the appellants here were very close to reaching settlement. The Forest Service went to Alpine County, who rejected that settlement. The county, of course, remains vehemently opposed to closing this road. The problem with that, aside from the fact that Alpine County remains opposed to it, the problem is the issue of accountability. Here, faced with a difficult decision, the agency applied the wrong standard with no public process and no public review, ceded jurisdiction of Forestdale Road to Alpine County. And if this agency is allowed to do it here, it will be allowed to do it elsewhere. And no claimant will ever have to prove up a right of way claim under RS-2477, which is squarely in conflict with the jurisprudence of this Court on the burden of proof in these right-of-way cases. How do you distinguish all of the cases that talk about the fact that it is the State courts which determine title to property, and that the agency's internal deliberative process, which resulted in its legal counsel's opinion that the Forest Service did not have jurisdiction over Forestdale Road, is still subject to challenge in, I guess it is an action that would be brought in the Superior Court of Alpine County. Alpine County is certainly free to pursue a quiet title action. But the Forest Service. So could the Forest Service. But in this case, neither of those parties has done so. In this case, what happened is Alpine County, the sole action taken by Alpine County is to pass a resolution in 1993 asserting jurisdiction over Forestdale Road. The county provided no support, made no effort to meet the burden of proof, clearly established by this Court, and based on this, the Forest Service stepped into the county's shoes and examined the evidence on its own and ceded jurisdiction over Forestdale Road to Alpine County. This Court has been very clear that any doubt in these RS-2477 right-of-way cases is resolved in favor of continued Federal ownership. The burden of proof is clearly on the claimant to show that they have a right-of-way. This is a very high standard to meet. And that's because it's the national policy of the United States, as articulated in the Federal Land Policy and Management Act of 1976, which repealed RS-2477, that Federal land should be maintained under Federal ownership unless it would serve the national interest to dispose those lands. As I stated, Alpine County has not met nor attempted to meet the burden of proof in this case. Counsel, I'd like to ask you briefly about the other piece of the case, the Forest Management Act claim and your request for an injunction as part of your relief. In a nutshell, what is your view of the clear violation of law by the Forest Service that would entitle you to injunctive relief on summary judgment? Your Honor, in the course of these proceedings, the current administration has revised the regulations that had required the closure of the Forestdale area. That's why in our reply brief, we emphasized the Court's equitable powers to grant injunctive relief. The we believe here that the balance of harms clearly favors granting injunctive relief, in this case, until the agency issues a new management plan. But doesn't there have to be, you originally requested summary judgment on your Forest Management Act claim, correct? That's correct. And what is it in the record that proves that you're entitled to that? Excuse me. I think the, again, we would, because those regulations have been changed in the course of this proceeding, they no longer apply to this case. Our argument over injunctive relief at this point is based on the fact that the balance of harms in the public interest here favors granting injunctive relief to appellants. Well, if that's, what's our standard of review of the district court's denial of an injunction if it's based purely on equitable considerations? It's a clearly erroneous standard and can be overturned if the district court has made erroneous legal conclusions or factual findings. In this case, the district court was clearly erroneous in both its RS-2477 review of the jurisdictional determination and its NEPA review, which found that the user surveys are too subjective to be the basis of a management plan, which is squarely in conflict with this court's holdings in Northwest Motorcycle and Bicycle Trails of Marin. On the balance of harm questions for injunctive relief, it's, here, the appellants have been denied relief here for nearly two decades. The lower court decision, in fact, left the appellants worse off in this case because it reversed the very small closures that the 1998 management plan had put in effect and reverted back to the 1992 management plan, which leaves the entire area open to snowmobiles. But aren't you really asking us to declare by way of injunction that the alternative that you proposed should be implemented immediately as opposed to our remanding it back to the Forest Service to tell the Forest Service to take another look at all of the available alternatives? We certainly would appreciate a remand to the agency to look at all of the available alternatives. That's what the district court did, did it not? The district court did remain the decision to the agency. However, the district court based that decision on the surveys or on the usability of those surveys, which, again, this court has squarely ruled are the best evidence of user conflict. The district court never even reached our actual NEPA claims, which is the agency hadn't considered a reasonable range of alternatives. I'm confused. Won't the agency consider all of that evidence on remand? Isn't that what the district court told it to do? No. In fact, the agency stated that the 1998 management decision is predicated upon those user surveys. The user surveys in this case were completed by both the Forest Service and the appellants. No one challenged the usability of those surveys in the district court. In fact, the Forest Service states that the management plan is predicated upon those various surveys. If the district court decision is upheld and this decision is remanded to the agency, the Forest Service will now be forced to do a new management plan at some point the agency since the district court decision two years ago has made no moves to implement a new management plan without the utility of the best evidence of the very conflict that the agency is trying to resolve, which is the user surveys. Let me touch briefly, if I may, on the merits that are at the heart of this case, which is the standard that the claimant here, Alpine County, must meet to assert jurisdiction under RS-2477. I mentioned that the burden of proof here rests with the claimant and any doubt is resolved in favor of continued federal ownership. There's also no dispute here that the proving a right-of-way under RS-2477 requires two things. First, evidence of construction, and second, evidence of sufficient public use in the time period required. The time period here is from 1893, that was the year that Alpine County disavowed any jurisdictional claim to Forestdale Road, and 1902, which is the year that the land was reserved. I mentioned why this is a high standard. The Forest Service stepping in the county's shoes is relying on vague generalities and obscurity to mask the fact that there is substantially no evidence to support either prongs of the test for jurisdiction. Regarding the first requirement, construction, the agency states that Summit City Road was constructed by miners in 1863, and that road most likely became Forestdale Road. The same evidence that the agency relies on to state that Summit City Road was constructed and most likely became Forestdale Road states that that road is now either a pack trail or Blue Lakes Road, clearly not Forestdale Road. There is no evidence of construction of Forestdale Road. In that sense, this case is very like Adams, where the court found that there was construction, but not of the road in question, and the claim for jurisdiction failed. Regarding the second requirement, public use, even if the agency is correct that Summit City Road did become Forestdale Road, which the record shows that it didn't, Summit City was abandoned in the 1870s, and the record shows that there was little to no public use after that time. That is not sufficient to show public use from 1893 to 1902. The agency instead relies on its theory that Hope Valley has become, quote, a hub of public activity during the late 19th and early 20th century. That may well be, but that certainly is not sufficient to show sufficient public use on Forestdale Road itself from 1893 to 1902 to support the county's claim. Because of all this uncertainty, the agency is clear to state, and the district court noted this, that there is significant uncertainty over jurisdiction of Forestdale Road, stating that the agency states that it's legally inconclusive. It appears Forestdale Road is under county jurisdiction. So what do you want us to do? Do you want us to send this back to the district court and tell the district court, in essence, hold a quiet title action and put the parties to their burdens of proof and make findings of fact and conclusions of law as to which party wins and who has jurisdiction over the road? What we think this court needs to do is to interpret the statute and provide guidance to the agency on the implementation of RS-2477. But it sounds to me like you're asking us to rule on the evidence. You want us to look at the record and tell the agency what weight it should give to this evidence or tell it that it gave too much weight to the evidence. Who's going to make the final determination? Well, because this is a ruling of law, your review here is de novo. And we believe it is appropriate for you to rule that the claimant in this case has not met the burden of proof in asserting its right of way and that the Forest Service was arbitrary and capricious by ceding jurisdiction without substantial evidence. Counselor, you're nearly out of time, and I know you wanted to reserve some for rebuttal. Reserve the remainder. Thank you. Thank you, Mr. Spitler. Mr. Sanders. Good morning, and may it please the Court, Matthew Sanders for the Forest Service. I thought I'd begin by addressing the most important issue in this case at this stage in the litigation, and that is whether this Court has appellate jurisdiction over the Friends' Appeal from the district court's order. Counsel, as you address that, I'd like the government's answer to the question I pose to opposing counsel, and that is the following. Assuming that after this remand, the government's bottom line does not change, will the question of the ownership of Forestdale Road be an appealable issue after that next round? Why don't I begin by addressing that question first? I think the answer is definitively yes. The point behind ALSEI is that it doesn't make sense to interject appellate review at a stage when a fundamentally different agency decision is plainly possible. How is it possible for it to be fundamentally different? I guess that's where I understand in theory what you're saying, but the district court granted summary judgment concerning the road. It basically said government wins, plaintiff loses, we're done with the road. So how could that be materially different after the remand on another question? Well, a couple of responses. First, I read the district court's decision to say that the title assessment was not an additional basis on which to set aside the 1998 decision notice. I think that on remand, the Forest Service could either issue a new title assessment, revisit the title assessment, or use the title assessment in a completely different way. But it wasn't instructed to do that by the court below. It was told to go do surveys on snowmobiling. That's basically what. That's right. But the district court assumed, and I guess the district court assumed that the Forest Service had conceded title in the county, and that was the end of that. I think you're right, Your Honor. Well, then how could it be open on appeal later? Well, because I think the Forest Service still retains the discretion to either revisit its title assessment or use it in a different way. Why is that? In the face of that decision, that's not likely. It may not be likely, but even if the Forest Service does not revisit the title assessment on remand, I don't think that precludes the Friends from later revisiting that issue on appeal once there is a final judgment. Well, first, I guess I have a lot of problems, and I'm going to try to unpack them. Okay. The first is where the district court says at page 10 of its decision, which I think is ER 28, the Forest Service's motion for summary judgment on plaintiff's RS 2477 claim is granted. So once that legal ruling is embodied in the court's judgment, why is that even open for reexamination? That is the judgment of the district court that what has been done has been given the final blessing in a final judgment, albeit a judgment that remands something. Well, the point I was going to make was that even if the district court says this is law of the case, I'm not going to revisit my prior determination concerning the title assessment. I don't know. I don't think that that means that the Friends can't seek review of that judgment on appeal once there is a final judgment. The point of ALSEI is that there has to be a final judgment, and district court orders vacating and remanding an agency's decision are not final, with one exception, and that is a government exception, where the agency is the appellant. The agency may appeal from the district court's remand order because only the agency will be deprived of an appellate review altogether. The district court's judgment in form is a final judgment. There are no claims of the plaintiffs that weren't thought about and determined. So in that sense, it's a final judgment. And the question, I guess, underlying it is whether there were two separate final agency actions, as the plaintiffs are arguing, or not. Because their assertion is that there actually are two separate final agency actions, one regarding the ownership of the road, and the other, the plan itself. Are there two actions by the agency here, or is there one action? Well, I would submit that there's one action, and I would like to get to that. But as a predicate issue, it doesn't matter. As this court held in National Association of Home Builders, a case that we submitted last week in a notice of supplemental authority, even where there are two separate final agency actions, if the district court remands one and upholds another, an appeal from the decision upholding the other agency action must still await the completion of the remand process. And even in Alcey's How would the ownership of the road affect the subsequent management plan, or could it, would it? Is it likely that it would? Well, we don't know. Well, I'm just, you're familiar with the case. Is it likely that if the Forest Service takes the position that ownership is with the county, that what they develop as a management plan would differ from that if the Forest Service, if the government itself owned the road? Well, I think it's certainly possible that on the basis of the title assessment, a new title assessment or not the title assessment at all, the Forest Service could select a management plan that addresses or otherwise obviates the Friends' concerns. For example, the Forest Service could select a decision that includes, that involves a partial seasonal closure of Forestdale Road, which I know the parties are engaged in discussions about now, in fact. And the, that would, that would involve working with Alpine County. On the other hand, the Forest Service could regulate access to Forestdale Road in a way that addresses or otherwise obviates the Friends' concerns. The point is, we don't know what will happen on remand and under ALSEI, because it's possible that a new agency decision will address or otherwise obviate the plaintiff's concerns. Appellate review should wait. The final judgment rule reflects the notion that the coherence and efficiency to be had from waiting for a single appeal at the end of a case outweighs the prejudice, if there is indeed any, and the costs of piecemeal review that plaintiffs might endure in the meantime. Well, opposing counsel have said that as things stand now, it doesn't really much matter what you agree to, because without the county's agreement, it doesn't, it can't be effected. Do you agree with that? And if so, what, what should we make of that in terms of our analysis? Well, two things. At page 53 of their opening brief, the Friends state that the, correctly, that the Forest Service has authority to regulate use of or access to Forestdale Road. Certainly, the Forest Service on remand could exercise that authority in a way that addresses their concerns. So let me just make that a practical question. Could you close access to the road, could you close it to snowmobile use without the acquiescence of the county? If, if the Forest Service is right, that the United States has likely been divested of a right of way under RS-2477, a complete closure without Alpine County's acquiescence is probably not possible. So that's a no, basically, to my question. No. Okay. Well, where does, where does that, it all seems very circular to me that you're saying you should, we should wait because on remand, you can grant them relief, but yet you actually can't grant them relief without the agreement of some third party. So in essence, you, through your process, can't grant them relief. Well, I. In the absence of a change in the status of the road. I think underlying that observation is the assumption that a total closure is the only relief that will satisfy the plaintiffs in this case. Well, they've asked for it. That's what they've asked for. That's true, but I'm not sure that that's, in fact, what would, I'm not sure that that's the case. I mean, certainly the Forest Service could, could partially close the road or could work with Alpine County. And to the extent that that's required to completely close the road, yes, that, that may be so. Is that a distinction from ALSEI? Because here, the road ownership decision drives everything else. And it is final. The district court said, you win, they lose, we're done, the road belongs to the county. Why isn't that about as final as it gets? Since that turns out to drive everything else, the remand will be, would be either different or irrelevant if the road ownership issue was wrongly decided by the district court. Well, again, I would still submit that the, that the Forest Service could take any number of actions that might address the plaintiff's concerns. It could work with Alpine County. And in that case, if the new decision was one that satisfied the plaintiff's concerns, then appellate review now doesn't make sense. Let me also address the final agency action issue. Because if, in fact, the title assessment is not a final agency action, then certainly that's the end of the discussion. The French are wrong that the title assessment is a separate final agency action. As the district court itself explained, it was not subject to review under the Administrative Procedure Act. It was neither the consummation of the Forest Service decision making process, nor did it have direct legal consequences. Rather, it was one of several interim steps the Forest Service took to arrive at a final decision in this case. That is, if it had any legal consequences at all, they were at most intermediate consequences whose effects on the French or other non-agency parties were contingent upon the execution of some further and final agency action, in this case, the 1998 decision notice. As we point out in our brief, the title assessment did not adjudicate or transfer title. It's certainly not our position that the county could use the title assessment to quiet title to a right of way over Forestdale Road. And we do not think that the title assessment meaningfully informed the agency's decision that was set aside. Instead, the agency relied on other management considerations to arrive at its final decision in this case. So you think we could still award the same relief in a subsequent appeal that the plaintiffs are asking for with regard to the 2477 issue? We could still declare the next time around that the decision was arbitrary and capricious and therefore vacate whatever the new management plan is and send it back? I think that's absolutely correct. I think, let's say the Forest Service on remand relies on the title assessment to conclude that it can't do something with respect to Forestdale Road. Again, the district court might say, I've already looked at the title assessment, I'm not going to revisit that issue. Nothing precludes the plaintiffs from seeking review of that judgment in that round of revisions. Let me give you a slightly altered hypothetical. What if on remand they don't mention that determination, but simply look at the user surveys and say, well, we've looked at all the things the district court said and it doesn't change anything in our minds. And they never again mention the ownership of Forestdale Road. And then the appeal comes to us. Can they appeal that determination? I think so. During the remand process, the friends are certainly free to provide comments and seek to influence the agency's decision. One of the things that they could do would be to say, Forest Service, you must look at this title assessment. You must revisit the title assessment or you have to use it or not use it. Presumably the Forest Service then has to respond to those comments. But why, but to follow up on Justice O'Connor's question, why would the agency do that if they already are in possession of a partial summary judgment award from Judge Levy's first decision, which says government wins, plaintiff loses on their 24-77 claim? Well, they may not, but the friends are still free to allege that either the Forest Service did rely on the title assessment, or if there's no evidence of that, they could say that the Forest Service should have prepared a new title assessment. And that is subject to review. Again, we're not saying that the friends cannot seek appellate review of the title assessment and the district court's statements concerning it. We're simply saying that they can't do so right now. And that's the point of ALSEI. Even if there is, even if it is a separate final agency action, it doesn't matter. The point is the remand process has to be complete until there is a new decision from the agency. Well, if the point of all of this is judicial economy, which it appears to be, I'm hard-pressed to understand why judicial economy would be served. Because if, and I'm not saying this is the case, but if we were to determine that the title assessment was wrong, clearly erroneous, arbitrary, and capricious, whatever, had to be redone, wouldn't that be the more efficient way to deal with this case? Then it would go back under the correct legal standard to be applied by the agency in all respects. Because the point of letting the agency deal with something on remand is to give it guidance. Here are the legal principles to apply. Do it over. And if we were to think that they've only gotten half of the correct legal standard to apply on remand, why is that in service of judicial economy? I think, I totally understand, and I think that's a very trenchant observation. But I would still direct the Court's attention to its decision in home builders. In that case, the two rules at issue were under the Endangered Species Act. One was a listing decision, and another was a critical habitat designation decision. And there, the District Court upheld a decision of the Fish and Wildlife Service to list a species as endangered, and remanded, vacated and remanded, the decision designating its critical habitat. If ever there were a case where a pellet review should have been had before the completion of the remand process, it was that case. Because if the listing decision is wrong and has to be vacated and remanded, then certainly the critical habitat designation for that species doesn't need to take place. Nonetheless, this Court held that it did not have jurisdiction until the completion of the remand process. Underlying, I think, the Court's questions is a concern about what prejudice the friends may suffer, if any, if they have to go through this remand process. And again, I would submit that the friends won't suffer any prejudice. But even if it's the case that they will, District Courts issue decisions all the time that cause immediate prejudice to parties. Denials of motions to dismiss, discovery orders. These are orders that have meaningful effects on parties, but nonetheless, they're not appealable. And that is because, as I said earlier, the final judgment rule reflects the notion that certain appeals from certain orders should wait until there is a final judgment. The friends have not made a good case here that there is any unusual or extraordinary urgency or prejudice that warrants immediate appellate review now. And there's no exception under ALSEA except for the government when the agency is the appellant. And I would also direct this Court's attention to the Supreme Court's decision just last term in Will v. Halleck, 126, Supreme Court 952. In that case, the Court was addressing whether an order of a District Court, which would force a defendant to go through trial, perhaps a trial in error, was appealable under the collateral order doctrine. And the Court said, no, it's not. And the reason is because there wasn't a substantial public interest that attached to the inability to seek immediate appellate review. This case certainly doesn't rise to the level of forcing the friends to go through a trial in error that they wouldn't otherwise have to. It's certainly not that kind of prejudice. And even that level of prejudice wasn't enough to allow review under the collateral order doctrine. So I don't think the friends have made a strong case here that even if they will suffer any prejudice, that prejudice is of such an extraordinary nature that this Court needs to carve out an exception to a well-settled rule, an exception that does not in this circuit exist. In the last couple minutes, if I may briefly address the injunctive relief issue, the only basis on which the friends have ever sought injunctive relief, to the extent that they have done so at all in this case, is under the Forest Service regulation, which requires the complete elimination of considerable adverse effects. Even in the reply brief, the friends do not show any irreparable harm that results from user conflicts. Transitory encounters with snowmobiles and loss of skiing opportunities in the absence of snowmobiles certainly is not irreparable harm, nor can they show that shifting entirely the perception and burden of conflict onto another group of users will be in the public interest. And as for the merits, the Forest Service has never taken the position that mere user conflict is the same thing as considerable adverse effects under its regulations. And the friends have never sought injunctive relief on any other basis. If the friends really feel that they will suffer harm, their remedies are to ask the title assessment now. They should have sought certification pursuant to Rule 54B or 28 U.S.C. 1292B. Nothing precluded them from doing that. And that was the relief that, as this Court explained in Homebuilders Association, was available to appellants who wanted to seek immediate appellate review of an otherwise unappealable order. For these reasons, the district court's denial of injunctive relief should be affirmed, and the remainder of the friends' appeal should be dismissed. Thank you. Thank you, counsel. And I believe we have a little bit of rebuttal time remaining. Thank you, Your Honors. In my few minutes of rebuttal here, let me just distinguish the Homebuilders case that appellants submitted on their Rule 28J letter. The factors that the Court looked at in that case were that the decisions were challenged in a single action, the district court expressly retained jurisdiction, the administrative record was substantially the same, and the statute required concurrent decision-making. None of those factors are present in this case. The Forest Service also mentions judicial efficiency. Here, resolution of this case is impossible, and it has been impossible since the first litigation was filed, and the reason for that is because of the jurisdictional questions over Forestdale Road. The appellants here cannot secure the relief they're requesting on remand without addressing those jurisdictional questions. And what will happen if this case or if this decision is remanded to the agency is a new jurisdictional determination will remain intact, and this decision will be squarely before this Court at some point in the future. There simply is no efficiency in that approach. The primary issue in this case is accountability, and here the agency is trying to evade accountability for its jurisdictional determination by raising procedural issues. For that reason, it's imperative that this Court provide guidance to the agency on how to implement the standards for determining the validity of RS-2477 right-of-way claims that this Court has already established and to preserve the public lands as the Congress has intended. Thank you, counsel. We appreciate very much the arguments of both of you, and the case just argued is submitted. But before you leave, I do actually have a question for both of you. Both counsel, during your arguments, mentioned that there had been settlement discussions at various times. And it might be helpful for the Court that if within the next seven days, if you would inform us whether you would like us to defer submission to pursue that further, either through our circuit mediation program or otherwise, let us know. Otherwise, we'll proceed in the normal course to decide the case.
judges: O'connor, Graber, Tallman